**FILED**
**Mar 16, 2023**
**08:48 AM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT NASHVILLE

| | | |
|---|---|---|
| **June Ruggieri,** | ) | **Docket No. 2020-06-1452** |
| **Employee,** | ) | |
| **v.** | ) | |
| **Amazon.com, LLC,** | ) | **State File No. 37474-2020** |
| **Employer,** | ) | |
| **And** | ) | |
| **American Zurich Ins. Co.,** | ) | **Judge Kenneth M. Switzer** |
| **Carrier.** | ) | |

## COMPENSATION ORDER GRANTING BENEFITS

June Ruggieri allegedly injured her shoulder while working at Amazon.com, LLC. Amazon contests the compensability of the claim. Ms. Ruggieri also seeks attorney's fees for her lawyer's efforts to secure Amazon's compliance with an expedited hearing order and for wrongful denial of her claim.

After a February 8, 2023 compensation hearing, the Court holds Ms. Ruggieri proved by a preponderance of the evidence that her injury arose primarily out of her employment. She is entitled to permanent partial disability and lifetime medical benefits. As to past benefits, the Court holds she is entitled to mileage reimbursement, payment of medical bills, and temporary total disability benefits from May 20 through September 22, 2021. Additionally, Ms. Ruggieri's attorney is awarded fees for his efforts to compel Amazon's compliance with a court order, but not for Amazon's purported wrongful denial of the claim.

## Facts

### *Procedural history and hearing testimony*

Ms. Ruggieri worked night shifts in the Amazon warehouse. She testified that on Tuesday, May 5, 2020, she was working as a "stower," moving packages off a rack and placing them in large bags. Lighter packages were typically placed on the top rack. As Ms. Ruggieri retrieved an unexpectedly heavy package from the top shelf of the rack, the

1

package fell and pulled her right arm downward. She explained that she pulled the package from the rack with her left hand, with her right hand underneath the package. Her right arm was fully extended; the package did not hit the ground.

Ms. Ruggieri said she immediately felt a tear in her right shoulder but continued working, hoping the injury would heal on its own. She performed her job duties using mostly her left arm. Ms. Ruggieri returned to work the next evening but left early due to shoulder pain. She testified that she thought her condition might improve after resting.

It did not. Ms. Ruggieri agreed that "eventually in the month of May 2020, [she] brought the claim to the attention of Amazon." On cross-examination, she said that on May 25, she told her manager about the injury, telephoned the third-party administrator, and completed Amazon's "Associate First Report of Injury" form. The form asked, "Date incident reported," and she wrote "5/25/20." She later clarified that she meant that as "the day that I filled out the form."[1]

On the form, Ms. Ruggieri wrote that she suffered a shoulder injury in 2000 that was not work-related. She explained at the hearing that in 2000, she was standing on the subway, hanging onto a strap, when the train stopped suddenly, causing a "burr" in her right shoulder. She testified that she improved after surgery and physical therapy, "as much as I needed." However, she conceded that she had some limitations and felt "tightness." Ms. Ruggieri testified that she did not feel "ripping" in her shoulder after the subway incident and was "totally oblivious" to it when it happened. After the accident at Amazon, however, her shoulder felt hot to the touch and was "completely different."

For the current injury, Amazon sent Ms. Ruggieri to a nearby emergency room. She testified that the provider took her off work until she saw a follow-up physician. Ms. Ruggieri did not introduce the emergency room records.

Amazon offered a panel, and Ms. Ruggieri chose Dr. Harold Nevels, who first saw her on June 4 and treated her conservatively throughout the month. Dr. Nevels diagnosed a work-related shoulder "sprain" and referred Ms. Ruggieri to Dr. Kyle Joyner.

Amazon never authorized the referral or offered a panel of orthopedists. Instead, it denied the claim on July 2, asserting Ms. Ruggieri gave a "late report" of her injury. It also sent a letter informing her that it denied the claim based on "medical information secured, the facts of the accident, and the provisions set forth in the Workers' Compensation Act."

Afterward, Ms. Ruggieri continued working, albeit with difficulty.

---

[1] Notice was a defense at a previous expedited hearing, but Amazon did not raise this defense at the compensation hearing. Notice, however, was a reason given for the denial, so the sufficiency and timeliness of Ms. Ruggieri's notice is a consideration for the Court regarding her entitlement to an attorney's fee for an alleged wrongful denial.

Ms. Ruggieri saw Dr. Joyner on her own in March 2021. At the first visit, she disclosed her previous shoulder injury on the intake questionnaire. Dr. Joyner suspected rotator cuff pathology and ordered an MRI, which confirmed a right-shoulder full thickness rotator cuff tear. Dr. Joyner performed surgery and ultimately released her in March 2022, placing permanent lifting restrictions.

Ms. Ruggieri testified that she can no longer perform work like her job at Amazon. She cannot write as well as she used to, but the restrictions and her residual disability do not interfere with her current work as an accountant, "yet."

After filing this lawsuit, Ms. Ruggieri requested an expedited hearing seeking additional treatment with Dr. Joyner and payment of past medical expenses. After an evidentiary hearing, the Court held she was likely to prevail at a hearing on the merits and ordered the requested relief, including the designation of Dr. Joyner as the authorized treating physician. Amazon appealed, but the Appeals Board affirmed.

At this trial, the threshold issue was the compensability of Ms. Ruggieri's claim. Specifically, the parties presented conflicting medical opinions on whether the injury arose primarily out of employment. The three experts' deposition testimony is summarized below.

*Medical proof*

Ms. Ruggieri saw Dr. Nevels, the authorized treating physician, five times in June 2020. Dr. Nevels is a family practice physician with over forty years' experience.

He testified that, at Ms. Ruggieri's first visit, she reported a "popping sensation" in her shoulder when the box fell, but later he recorded it as a "tearing sensation." He also noted limited range of motion using various methodologies. Ms. Ruggieri told him she had shoulder surgery twenty years before and that she had treated about a week ago at the emergency room, where x-rays and a CT scan were negative. Dr. Nevels diagnosed a shoulder sprain, placed her on restricted duty, and ordered physical therapy, which was never authorized. At every visit, Dr. Nevels completed a form for Amazon characterizing the injury as "work-related."

At a later visit, Dr. Nevels referred her directly to Dr. Joyner for "reevaluation." Over the course of his treatment, Dr. Nevels noted that Ms. Ruggieri's range of motion was gradually improving, but he maintained her work restrictions. He testified that range of motion can improve over time if the tear is small. At the last visit, Dr. Nevels still thought her injury, which he called a "sprain," was work-related.

Dr. Joyner is an orthopedic surgeon who earned a certificate of qualification for upper extremity surgery. He has been practicing for sixteen years, and his practice is mostly surgical.

Dr. Joyner first saw Ms. Ruggieri in March 2021, where he ordered an MRI. The results showed, in part, a full thickness rotator cuff tear. He said the results were consistent with the mechanism of injury she described, picking up a box and feeling a tear, and they suggested a "subacute type injury." Dr. Joyner responded "yes" to a causation letter asking whether the injury related to work. After reviewing the complete definition of "injury" in the Workers' Compensation Law, Dr. Joyner testified that Ms. Ruggieri's injury and need for surgery were caused by work.

As to the mechanism of injury, Dr. Joyner said that it is common that a heavy falling object, caught by both arms, might cause a tear in one shoulder but not the other. He also said an individual's range of motion might improve slightly on its own after a tear, or they might learn to live with pain. Ms. Ruggieri returned seven times post-surgery and showed gradual improvement. She was taken off work from the date of surgery, May 20, 2021, and Dr. Joyner placed work restrictions on September 22, 2021. He reviewed bills for his treatment, diagnostic testing, surgery, anesthesia, and post-surgery physical therapy and said they were reasonable and necessary.

On cross-examination, Dr. Joyner acknowledged that he did not see records from the emergency room or Dr. Nevels. He said he believed the injury related to the work accident once he saw the MRI results. The MRI did not show blood in the AC joint, which would have suggested a more recent tear, he said. Dr. Joyner described the tear as both "small to medium" and "significant." Dr. Joyner was not aware of the previous shoulder surgery, other than Ms. Ruggieri had written on an intake form for past surgeries "shaved down a bone spur." He said it might alter his opinion depending on the nature of the injury and her functional recovery; however, if she were able to "snap her bra" afterward, that would suggest she returned to a normal range of motion.

Dr. Joyner agreed that age and diabetes can be causative factors, but he explained: "All those are factors in evaluation, but once you have had a chance to look at the tendon, those other factors become less important." He later added, "I had a direct look at her rotator cuff, so I was able to assess the injury under direct visualization, and through that evaluation I think make a pretty reasonable determination on the nature of this injury."

As to impairment, Dr. Joyner said he uses the *AMA Guides, Sixth Edition* often but is not an expert in the sense that he teaches them to other physicians. He assigned a five-percent impairment rating using the range-of-motion rating method.

Dr. Jeffrey Hazlewood is board-certified in physical medicine and rehabilitation, and in pain management. He has attended multiple seminars on the *AMA Guides* and has

4

presented on them many times as well. He has also attended the American Association of Orthopedic Surgeons' causation conference for the past three years.

Dr. Hazlewood saw Ms. Ruggieri once, for an employer's examination in September 2021, solely for the purpose of obtaining a causation opinion. He testified that she reached for the heavy box that purportedly caused the injury with both arms, and the box did not "tilt or slant or jerk her." Dr. Hazlewood questioned why the box only injured one shoulder and not the other if the impact was equal to both arms.

Dr. Hazlewood was aware of Ms. Ruggieri's 2000 surgery and that she was pain-free and able to work without limitations afterward, although he noted that she still suffered some residual stiffness from the procedure. Dr. Hazlewood said that age, being overweight, and suffering from diabetes can also be causative factors for rotator cuff tears, along with highly repetitive work and force alone. He noted that Ms. Ruggieri "waited two or three weeks" to see a physician, which was "not unprecedented" but "atypical," given the associated pain.

Dr. Hazlewood used the methodology described in the *AMA Guides to the Evaluation of Disease and Injury Causation, Second Edition.* Considering all potential causes, Dr. Hazlewood concluded that the chance that work caused the injury and need for treatment was "down below fifty percent." He did not give an opinion on Ms. Ruggieri's impairment but questioned the methodology Dr. Joyner used to reach his rating.

Dr. Hazlewood stated that both an emergency room physician and Dr. Nevels at one point recorded a normal range of motion. He said, "If one tears a rotator cuff, it doesn't go abnormal initially and then go back to normal." Dr. Hazlewood testified that he found Ms. Ruggieri credible and that she did not display symptom magnification. He clarified that he believed she suffered a strain at work but the rotator cuff tear was idiopathic.

*Requested benefits*

Ms. Ruggieri sought open medical benefits with Dr. Joyner. As for past medical benefits, the parties agreed that Ms. Ruggieri incurred mileage expenses totaling $995.26. Both attorneys created lists of unpaid medical bills and agreed that from March 9 through June 15, 2021, the bills total $41,128.85. They dispute six bills totaling $11,477.00. Of the latter amount, Amazon argued that it already paid $11,240 of it, incurred on the date of surgery, on June 27, 2022; Ms. Ruggieri maintained these bills have not been paid. Amazon also argued that no actual bill exists for a $237 charge for anesthesia.

As for temporary disability benefits, Ms. Ruggieri did not claim temporary partial disability. She testified that the emergency room providers took her off work until she saw Dr. Nevels, but she offered no specifics regarding the exact dates she did not work, nor did she introduce records where a doctor took her off work for that time. Ms. Ruggieri testified

that she left Amazon during the last week of April 2021 but gave no details of the separation other than it was "not a voluntary act" on her part. She returned to work for another employer in November 2021. She sought past benefits from when she left Amazon until returning to work.

Regarding permanent partial disability, Ms. Ruggieri requested an award using Dr. Joyner's five-percent impairment rating. She is not seeking increased benefits.

In preparation for trial, the parties discovered billing irregularities from Dr. Joyner's practice, and specifically that Amazon had not paid some of the bills for Ms. Ruggieri's treatment. Ms. Ruggieri filed two separate motions seeking orders that Amazon comply with the expedited hearing order. She requested attorney's fees for her counsel's efforts to secure that payment. The Court ultimately found that Amazon complied with the expedited hearing order but did not do so timely, and reserved ruling on the fee request until this compensation hearing. Ms. Ruggieri also argued that she is entitled to fees for Amazon's wrongful denial of the claim.

**Findings of Fact and Conclusions of Law**

At a compensation hearing, Ms. Ruggieri must show by a preponderance of the evidence that she is entitled to benefits. Tenn. Code Ann. § 50-6-239(c)(6) (2022).

*Compensability*

At the outset, Ms. Ruggieri must show that she suffered an "injury" as defined in the Workers' Compensation Law.

Tennessee Code Annotated section 50-6-102(12)(A) defines "[i]njury" to mean "an injury by accident . . . arising primarily out of and in the course and scope of employment," that causes the need for medical treatment. An injury "arises primarily out of and in the course and scope of employment" only if it has been shown by a preponderance of the evidence, and to a reasonable degree of medical certainty, that the employment "contributed more than fifty percent" in causing the injury, considering all causes. *Id.* at -102(12)(B)-(C).

Here, the experts disagree. In evaluating conflicting expert testimony, a trial court may consider, among other things, "the qualifications of the experts, the circumstances of their examination, the information available to them, and the evaluation of the importance of that information through other experts." *Orman v. Williams Sonoma, Inc.,* 803 S.W.2d 672, 676 (Tenn. 1991).

Considering their qualifications, all three physicians possess the education and experience necessary to give reliable opinions. Dr. Nevels brings expertise in family

practice− not orthopedics.  Dr. Hazlewood brings expertise in physical medicine, rehabilitation, and pain management−not orthopedics.  He also brings a great deal of self-study on the *AMA Guides* and causation, although the Workers' Compensation Law does not require that causation opinions be formulated using any prescribed medical methodology.

For his part, Dr. Joyner is an orthopedic specialist with a certification in hand and upper-extremity surgery, and his practice is mostly surgical.  He also saw Ms. Ruggieri on multiple occasions and had the benefit of seeing her shoulder condition during surgery.  This places him in a better position to formulate a causation opinion in this case.

As for the circumstances of their evaluations, Drs. Nevels and Joyner were treating physicians.  Both saw Ms. Ruggieri on multiple occasions.  It bears repeating that Dr. Nevels was a panel-selected physician and saw her five times.  He remained of the opinion that the injury, which he diagnosed as a "sprain," was work-related.  Dr. Nevels reported that opinion to Amazon after every visit.

Dr. Joyner became involved initially as an unauthorized physician, presumably with no alliances, although later he was designated as the authorized treating physician.  Interestingly, Dr. Joyner was the named referral physician by Dr. Nevels.  Dr. Joyner treated Ms. Ruggieri nine times during one year.  In contrast, Dr. Hazlewood saw Ms. Ruggieri once, solely to determine causation.  From that lone interaction, even he said he thought she was credible and not magnifying her symptoms.  Dr. Joyner's lengthy treatment of Ms. Ruggieri gives him an edge over the other physicians, who saw her less frequently.

Regarding the information available to them, Dr. Hazlewood indisputably reviewed the most complete set of records and knew of Ms. Ruggieri's previous surgery.  He was thorough in learning her history and scrutinized the records closely for inconsistencies.  In contrast, Dr. Joyner testified that he did not know about the prior procedure, despite her disclosing it on her intake paperwork.  But Dr. Joyner testified that the MRI results were enough for him to determine causation.  His expertise in surgery, which Dr. Hazlewood does not possess, gives his opinion additional weight.

As for the previous surgery, Dr. Joyner adequately explained that knowledge of surgery that occurred more than twenty years ago was not required, given Ms. Ruggieri's return to functionality from it.  He also stated that her age and diabetes became less significant to him once he observed the rotator cuff and tear.  He evaluated its size and saw no blood or other indicators that the tear was not a "subacute injury."  Dr. Joyner maintained that the injury related to the work accident despite rigorous cross-examination, offering plausible explanations to every question casting doubt upon his conclusions.

In sum, the Court finds that Dr. Joyner's causation opinion is the most persuasive. Case law generally supports this finding. "It seems reasonable that the physicians having greater contact with the Plaintiff would have the advantage and opportunity to provide a more in-depth opinion, if not a more accurate one." *Orman,* at 677; *see also Smith v. TrustPoint Hosp., LLC,* 2021 TN Wrk. Comp. App. Bd. LEXIS 1, at *21 (Jan. 6, 2021) (trial court did not err in accepting the authorized treating physician's opinion over that of another expert, where the authorized physician had the benefit of seeing the employee's condition during surgery). Moreover, "[o]n questions of medical causation, '[t]he law does not require absolute certainty on the part of the medical expert and allows for the existence of some doubt.'" *Lurz v. Int'l Paper Co.,* 2018 TN Wrk. Comp. App. Bd. LEXIS 8, at *17-18 (Feb. 14, 2018) (Internal citation omitted).

Ms. Ruggieri's testimony bolsters this decision as well. She credibly testified regarding the mechanism of injury, including that she felt a tear in her shoulder when the heavy package fell. She also convincingly stated that before the work accident, she had full functionality of her shoulder, and that the injury-causing incident in 2000 felt different than the pain she experienced after the Amazon injury.

The Court holds that Ms. Ruggieri has shown by a preponderance of the evidence that she suffered an injury arising primarily out of and in the course and scope of her employment at Amazon.

*Requested relief*

Turning first to medical benefits, Tennessee Code Annotated section 50-6-204(a)(1)(A) requires an employer to furnish medical treatment at no cost to the employee. Therefore, Amazon shall furnish reasonable, necessary, and related medical treatment, and Dr. Joyner shall be the authorized treating physician.

This same provision requires Amazon to pay for past treatment for the work injury. The parties agreed that the unpaid bills total $41,128.85; Amazon must pay them. As to the remaining amounts, the Court accepts Amazon's attorney's representation that it has already paid $11,240.00. Should Ms. Ruggieri learn these bills were not paid, Amazon shall immediately pay them. Likewise, if $237.00 is later charged for anesthesia, Amazon shall pay it.

Ms. Ruggieri also sought $995.26 for mileage reimbursement. Amazon shall pay it.

As for temporary total disability benefits, Ms. Ruggieri must prove (1) total disability from working as the result of a compensable injury; (2) a causal connection between the injury and the inability to work; and (3) the duration of the period of disability.

*Shepherd v. Haren Constr. Co., Inc.,* 2016 TN Wrk. Comp. App. Bd. LEXIS 15, at *13 (Mar. 30, 2016).

Here, as previously stated, Ms. Ruggieri proved that her injury is compensable. Dr. Joyner restricted her from working on May 20, the date of surgery, and continuing until she could work with restrictions on September 22, 2021. This is a total of 125 days. The agreed weekly compensation rate is $401.31, or $57.33 daily. So, she is entitled to $7,166.25 in past temporary total disability benefits.

Next, Ms. Ruggieri seeks permanent partial disability benefits. Tennessee Code Annotated section 50-6-207(3)(A) allows for an original award of permanent partial disability benefits for an employee who sustains a permanent work injury. The award is calculated by multiplying the applicable permanent impairment rating by 450 weeks and then multiplying that number of weeks by the employee's compensation rate.

Dr. Joyner assigned a five-percent impairment rating, using the *AMA Guides.* Amazon questioned the accuracy of the rating, relying on Dr. Hazlewood's critique. Importantly, Dr. Hazlewood did not offer an alternative rating. Dr. Joyner testified that he used the range-of-motion method because she had not recovered her full range of motion. He acknowledged measuring four planes versus six. Considering his testimony as a whole, Dr. Joyner's rating is persuasive.

Moreover, Ms. Ruggieri credibly testified that she can no longer lift like she did at Amazon, and she cannot write well since the injury. The Supreme Court has consistently held that an employee's assessment about her own physical condition is competent testimony that is not to be disregarded. *Limberakis v. Pro-Tech Sec., Inc.,* 2017 TN Wrk. Comp. App. Bd. LEXIS 53, at *5-6 (Sept. 12, 2017).

The Court finds Ms. Ruggieri sustained a five-percent permanent impairment. Applying the statutory formula, Ms. Ruggieri is entitled to benefits totaling $9,029.48.[2]

*Attorney's fees*

Tennessee Code Annotated section 50-6-226(d)(1) describes two circumstances in which a court may award attorney's fees and expenses "in addition to attorneys' fees [otherwise] provided for in this section": (A) when an employer "[f]ails to furnish appropriate medical . . . treatment" provided for in an expedited hearing order; or (B) when an employer "[w]rongfully denies a claim[.]"

---

[2] The award was calculated by multiplying the five-percent rating by 450 weeks, which is twenty-two and one-half weeks, times the compensation rate of $401.31.

To be eligible for an award of reasonable attorney's fees and expenses under section -226(d)(1), an employee must show either that the employer failed to furnish appropriate medical treatment as provided for in a court order, or that the employer was erroneous or incorrect in denying the employee's claim for benefits. *Walls v. United Technologies Corp.,* 2021 TN Wrk. Comp. App. Bd. LEXIS 27, at *19 (Aug. 6, 2021). An employee satisfies her burden of proof under section -226(d)(1)(B) if the employee proves the employer's denial was "erroneous, incorrect, or otherwise inconsistent with the law or facts *at the time the denial decision was made." Id.* at *24 (Emphasis added).

Ms. Ruggieri requested attorney's fees incurred to compel compliance with the expedited hearing order. The expedited hearing order issued on June 9, 2021. In preparing for and taking the deposition of Dr. Joyner on June 6, 2022, counsel discovered that many of the ordered charges had not been paid. Ms. Ruggieri filed a motion to enforce the expedited hearing order on July 1, 2022. The Court granted that motion on August 4 and gave Amazon until August 31st to comply. Once again, Amazon failed to comply with the order, and a second motion was filed on September 7, 2022. This resulted in an October 12 order confirming−yet again−Amazon's noncompliance with Court orders.

Reviewing the technical record, Amazon eventually paid the bills as ordered, albeit not timely. Specifically, the Appeals Board affirmed the order to pay the bills on September 7, 2021, and Amazon completed paying them on September 30, 2022, over one year later. It offered no evidence or argument *at the hearing* to justify its actions, but pleadings suggest that the medical offices were not helpful when Amazon tried to pay the bills in summer 2022. The Court found that rationale unpersuasive then, and now.

The Appeals Board recently issued an instructive opinion on this question. In *Mitchell v. AECOM d/b/a Shimmick Construction, Inc.,* 2023 TN Wrk. Comp. App. Bd. LEXIS 5, at *10-11 (Jan. 27, 2023), the Board held that the statutory mandate to "furnish" care for a work injury includes not only authorizing it but also "the *payment* of the medical expenses." (Emphasis in original). The Board further rejected an employer's arguments that the medical providers refused to follow the Bureau's rules regarding payment, making its nonpayment reasonable. *Id.* at *7-8. The Board also pointed out options available to employers when medical providers are uncooperative. *Id.* at *8.

The Court holds that Ms. Ruggieri's attorney is entitled to his requested fees for securing compliance. His affidavit requests a $350.00 hourly fee. Amazon did not dispute the reasonableness of the rate or object to the time charges related to this portion of the case. After scrutinizing the itemized billing attached to the fee application and identifying those entries related to the compliance issue, the Court finds counsel spent 52.4 hours on it. The entries are highlighted in Appendix 1 to this order. The Court awards $18,340.00 in attorney's fees.

Ms. Ruggieri additionally requests attorney's fees for Amazon's wrongful denial of the claim. Looking to the record, the reasons for the denial were multiple: "late reporting," and "medical information secured, the facts of the accident, and the provisions set forth in the Workers' Compensation Act."

The Court need only consider the first reason, "late reporting." Ms. Ruggieri testified that her notice was "timely." However, the "Associate First Report of Injury" is dated May 25, 2020, and the form gives a May 5 date of injury. This is undeniably past the fifteen-day deadline in Tennessee Code Annotated section 50-6-201(a) for an employee to give an employer written notice. It is the only proof of Amazon's knowledge at the time the decision was made. Ms. Ruggieri did not offer proof of timely reporting *at this hearing, and on this record.* Simply put, she did not satisfy her burden as described in *Walls* on this issue. This request is denied.

IT IS, THEREFORE, ORDERED AS FOLLOWS:

1. Amazon shall furnish reasonable, necessary, and related medical treatment for the work-related right shoulder injury, and Dr. Joyner shall be the authorized treating physician.

2. Amazon shall pay for past treatment for the work injury. Specifically, it shall pay bills totaling $41,128.85. Amazon need not pay bills it has already paid or that were not billed. Amazon shall only be liable for amounts as permitted under the fee schedule.

3. Amazon shall reimburse Ms. Ruggieri for mileage in the amount of $995.26.

4. Amazon shall pay Ms. Ruggieri $7,166.25 in past temporary total disability benefits. Her attorney is entitled to a fee of twenty percent of this award.

5. Amazon shall pay Ms. Ruggieri $9,029.48 in permanent partial disability benefits. Her attorney is entitled to a fee of twenty percent of this award.

6. Amazon shall pay Ms. Ruggieri's attorney $18,340.00 as fees for securing compliance with the expedited hearing order. His requested sum for the alleged wrongful denial of the claim is denied.

7. Amazon shall pay $150.00 costs to the Court Clerk within five business days after this order becomes final under Tennessee Compilation Rules and Regulations 0800-02-21-.06 (February, 2022).

8. Amazon shall submit to the Court Clerk a Statistical Data Form (SD-2) within ten business days of this order becoming final.

9. Unless appealed, this order shall become final thirty days after issuance.

**ENTERED March 16, 2023.**

_Kenneth M. Switzer_
**JUDGE KENNETH M. SWITZER**
**Court of Workers' Compensation Claims**

12

## Appendix 1

## Ms. Ruggieri's attorney's itemized statement

| Date | Time | Activity |
|---|---|---|
| 6/2/2022 | 0.3 | emails from and to TOA re: missing depo check |
| 6/3/2022 | 0.3 | emails from and to TOA re: missing depo check, signed and submitted depo contract |
| 6/3/2022 | 0.1 | letter from Publix Pharmacy |
| 6/3/2022 | 0.2 | emails from and to court reporter, sent Notice of Depo |
| 6/6/2022 | 4.5 | prepared for Dr. Joyner depo and compiled all exhibits |
| 6/6/2022 | 1.0 | drive to Dr. Joyner depo |
| 6/6/2022 | 0.3 | meeting with Middle TN Surgery Center to get certified bills |
| 6/6/2022 | 0.3 | meeting with TOA to get certified bills |
| 6/6/2022 | 2.0 | Dr. Joyner depo |
| 6/6/2022 | 1.0 | phone call with client while drive to office from Dr. Joyner's depo |
| 6/13/2022 | 2.1 | email from opposing counsel, read employer's answers to written discovery |
| 6/14/2022 | 0.4 | multiple emails to opposing re to no oath page and deficient discovery responses |
| 6/14/2022 | 1.5 | multiple emails from court reported, read and analyzed Dr. Joyner's depo |
| 6/15/2022 | 0.4 | multiple phone calls with TOA re: no chart attached to depo |
| 6/15/2022 | 0.4 | emails to and from TOA re: no chart to depo |
| 6/17/2022 | 0.2 | email from opposing counsel re: deficient discovery response |
| 6/23/2022 | 2.5 | prepared for Dr. Nevels depo and compiled for all exhibits |
| 6/23/2022 | 0.1 | email from to and to court reported re: depo |
| 6/23/2022 | 0.5 | email from opposing counsel, read 63 pages of employee time cards |
| 6/23/2022 | 0.2 | email to Dr. Nevels's staff |
| 6/23/2022 | 0.3 | email from opposing counsel, read mediation forms with attachments, |
| 6/23/2022 | 0.8 | drafted and submitted premeditation documents to mediator |
| 6/23/2022 | 1.6 | phone call with client discussed Dr. Nevels's depo and discussed case |
| 6/24/2022 | 1.0 | depo of Dr. Nevels |
| 6/24/2022 | 0.2 | meeting with opposing counsel after depo |
| 6/24/2022 | 0.2 | meeting with Dr. Nevels staff to get complete chart |
| 6/24/2022 | 0.1 | email to client re: return to work |
| 6/24/2022 | 0.2 | phone call to Medicopy re TOA records |
| 6/24/2022 | 0.4 | in person meeting with Medicopy for records |
| 6/24/2022 | 0.1 | email from client re: TOA records |

| | | |
|---|---|---|
| 6/24/2022 | 1.2 | multiple phone calls with clients re case and missing TOA records |
| 6/25/2022 | 0.1 | email from client re: cost |
| 6/25/2022 | 2.2 | multiple phone calls with clients re: triall in 35 days and missing TOA records and missing discovery |
| 6/27/2022 | 0.1 | email from opposing counsel re: please call |
| 6/27/2022 | 0.2 | phone call with opposing counsel re request to modified status order |
| 6/27/2022 | 0.3 | email from opposing counsel, read motion to modify status order |
| 6/27/2022 | 1.2 | multiple phone calls with client regarding trial maybe delayed and discussed case |
| 6/28/2022 | 0.1 | multiple emails from Court Clerk |
| 6/28/2022 | 2.0 | drafted and filed response to motion to modify status order |
| 6/28/2022 | 0.8 | drafted and filed notice to seek attorney fees |
| 6/28/2022 | 3.5 | draftet and filed motion to compel discovery responses |
| 6/28/2022 | 0.2 | multiple email to opposing counsel re filings |
| 6/29/2022 | 0.4 | multiple phone calls with TOA billing re: missing bills |
| 6/29/2022 | 0.2 | email from and to mediator, read Notice |
| 6/29/2022 | 0.8 | multiple emails to and from TOA business office, read and analyzed bills |
| 6/29/2022 | 0.4 | multiple emails to and from client re: analysis TOA bills |
| 6/29/2022 | 2.5 | detailed accounting of all medical bills dates of services to see if paid by employer or not |
| 6/29/2022 | 1.9 | phone call with client re: amazon in contempt of court, need continuance of trial |
| 6/29/2022 | 4.0 | began drafting motion for contempt |
| 6/30/2022 | 4.0 | completed motion for contempt with attachments and flied |
| 6/30/2022 | 0.1 | email from client |
| 6/30/2022 | 0.2 | email from court clerk, read order |
| 6/30/2022 | 0.2 | multiple emails from and to mediator re: mediation |
| 6/30/2022 | 1.0 | mediation |
| 6/30/2022 | 2.2 | phone call with client re: contempt, continuance, discovery, and plan of action |
| 6/30/2022 | 0.8 | multiple emails to opposing counsel re:detailed anaylsis of unpaid bills. |
| Total | 53.8 | |

| Date | Time | Activity |
|---|---|---|
| 7/1/2022 | 5.1 | drafted and filed motion for continuance |
| 7/1/2022 | 0.1 | multiple emails from court clerk |
| 7/1/2022 | 0.1 | multiple emails from and to opposing counsel re: filings |
| 7/1/2022 | 0.2 | email from mediator, read DCN |
| 7/1/2022 | 0.2 | multiple email from TOA/Medicopy re: missing records |
| 7/5/2022 | 0.2 | email from and to client re: TOA records |
| 7/5/2022 | 0.2 | email to Medicopy re: excessive charges and unable to download |
| 7/6/2022 | 0.4 | detailed emails from and to Medicopy re: incomplete TOA records |
| 7/6/2022 | 0.3 | email from opposing counsel, read and analyzed their response to my motion to compel |
| 7/7/2022 | 1.2 | phone call with client re: TOA records and status |
| 7/7/2022 | 0.1 | email from WC Court Clerk |
| 7/7/2002 | 0.1 | email to TOA Medicopy |
| 7/7/2022 | 0.2 | multiple emails to and from client re: employment status and plan of action |
| 7/7/2022 | 0.4 | multiple emails from and to Jane Salem and opposing counsel re: Motion Hearing |
| 7/7/2022 | 0.8 | multiple emails from opposing counsel, read and analyzed payment ledger and reviewed supplemental discovery responses |
| 7/7/2022 | 0.2 | email from Court Clerk, read Order |
| 7/8/2022 | 1.1 | email from opposing counsel, read and analyzed employer discovery responses |
| 7/8/2022 | 0.2 | email/letter from opposing counsel re: please update discovery |
| 7/11/2022 | 0.3 | email from mediator, read all attached documents |
| 7/11/2022 | 0.1 | email from Court Clerk |
| 7/11/2022 | 1.1 | email from opposing counsel, read & analized response Motion for Contempt and response to Motion for Continuance |
| 7/12/2022 | 0.1 | email from Court Clerk |
| 7/12/2022 | 0.1 | email from court reporter |

| | | |
|---|---|---|
| 7/12/2022 | 0.1 | email from opposing counsel re: Dr. Hazelwood's depo exhibits are out of order |
| 7/16/2022 | 0.1 | email from Court Clerk |
| 7/16/2022 | 0.1 | email from client re: Amazon issues |
| 7/18/2022 | 0.2 | emails to and from Jane Salem |
| 7/18/2022 | 0.2 | email from Court Clerk, read Notice and Order |
| 7/18/2022 | 0.2 | emails to and from client re: no trial Aug. 2 |
| 7/20/2022 | 0.1 | email from client re: Amazon issues |
| 7/28/2022 | 0.1 | email from Court Clerk |
| 7/28/2022 | 0.9 | multiple emails from opposing counsel, read and analyzed supplemental response to Motion to Contempt |
| 7/30/2022 | 0.1 | email from Court Clerk |
| 7/31/2022 | 0.2 | emails from and to client re: hearing |
| Total | 15.1 | |

| Date | Time | Activity |
|---|---|---|
| 8/1/2022 | 0.8 | prepared for Motion hearing |
| 8/1/2022 | 0.5 | phone call with client re: hearing and update |
| 8/2/2022 | 1.0 | Motion Hearing with Judge |
| 8/3/2022 | 0.2 | email from Court Clerk, read Notice |
| 8/4/2022 | 0.9 | email from Court Clerk, read and analyzed Order on Contempt and Order on Discovery |
| 8/11/2022 | 0.9 | phone call with client re: ruling and discussed case |
| 8/31/2022 | 0.3 | multiple emails from court reporter, billed reduced for unwanted services |
| 8/31/2022 | 0.9 | multiple emails from opposing counsel, read and analyzed employers notice of payment of bills and motion for extension of time |
| 8/31/2022 | 3.1 | email from and to opposing counsel re: supplemental discovery, read 794 pages |
| 9/1/2022 | 0.1 | email from Court Clerk |
| 9/6/2022 | 0.2 | emails from and to BCBS subro adjuster |
| 9/7/2022 | 5.0 | drafted response to employers request for more time and 2nd Motion for Contempt |
| 9/7/2022 | 0.1 | email to opposing counsel re: filings |
| 9/7/2022 | 0.2 | emails to and from clerk re: locked out of TN Comp |
| 9/7/2022 | 0.3 | emails to and from Jane Salem and opposing counsel re: setting motions |
| 9/8/2022 | 0.1 | emails to and from Jane Salem and opposing counsel re: setting motions |
| 9/8/2022 | 0.1 | email from Court Clerk |
| 9/13/2022 | 0.9 | phone call with client re: pay stubs with new employers |
| 9/14/2022 | 0.7 | email from client and read and analyzed 24 pages of pay stubs |
| 9/15/2022 | 0.1 | email to and from client re: pay stubs |
| 9/28/2022 | 0.1 | email from Court Clerk |
| 9/29/2022 | 0.2 | emails to and from opposing counsel and court clerk re: filings |
| 9/30/2022 | 0.1 | email from court reporter |
| 9/30/2022 | 0.5 | email from opposing counsel, read and analyzed payments in Notice of Complaince |
| 9/30/2022 | 0.1 | email from Court clerk |

| Total | 17.4 |
|-------|------|

| Date | Time | Activity |
|------|------|----------|
| 10/5/2022 | 0.4 | email from opposing counsel, read & analized respsonse to 2nd contempt motion |
| 10/6/2022 | 0.1 | email from Court Clerk |
| 10/7/2022 | 0.1 | email from Court Clerk |
| 10/10/2022 | 0.1 | email from client re: hearing |
| 10/10/2022 | 0.4 | compiled pay stubs and sent email to opposing counsel re: pay stubs and other issues supplement discovery |
| 10/10/2022 | 0.8 | Motion Hearing with Judge |
| 10/11/2022 | 0.1 | email from Court Clerk, read Notice |
| 10/12/2022 | 0.5 | email from Court Clerk, read and analyzed Order |
| 10/12/2022 | 0.1 | phone call to opposing counsel |
| 10/12/2022 | 0.1 | email from opposing counsel re: status hearing |
| 10/12/2022 | 0.1 | email from mediator re: mediation |
| 10/18/2022 | 0.3 | emails from and to opposing counsel and mediator re: mediation |
| 10/27/2022 | 0.2 | emails from and to Jane Salem and opposing counsel re: status hearing |
| 10/27/2022 | 0.1 | email from clerk and read Notice |
| 12/6/2022 | 0.1 | email to BCBS subro adjuster |
| 12/7/2022 | 0.5 | email from BCBS adjuster, read and analyzed payments |
| 12/12/2022 | 0.1 | email from Court Clerk |
| 12/13/2022 | 0.2 | email from mediator, read forms |
| 12/14/2022 | 1.1 | mediation |
| 12/14/2002 | 0.4 | email from and to mediator and DCN with docs |
| 12/14/2022 | 1.2 | phone calls with client re: mediation |
| 12/15/2022 | 0.2 | Status Hearing with Judge |
| 12/15/2022 | 0.2 | email from Court Clerk, read Pretrial Order |
| 12/15/2022 | 1.0 | phone call with client re: no settlement and going to trial |
| 12/21/2022 | 0.3 | email from opposing counsel, read employers additional for |
| 12/22/2022 | 0.3 | email from mediator , read final DCN and all attachments |
| 12/22/2022 | 0.1 | email from Court Clerk |
| Total | 9.1 | |

**TOTAL 52.4 HOURS = $18,340.00**

**Appendix 2**

Technical Record:
1. Petition for Benefit Determination
2. Dispute Certification Notice and Employer's additional issues, February 10, 2021
3. Hearing Request
4. Pretrial Hearing Order
5. Employer's Response to Hearing Request
6. Motion to Continue Expedited Hearing
7. Employee's Response to Motion to Continue Expedited Hearing
8. Expedited Hearing Order Granting Medical Benefits
9. Appeals Board opinion
10. Status Hearing Order, September 15, 2022
11. Status Hearing Order, December 6, 2022
12. Status Hearing Order, March 29, 2022
13. Status Hearing Order, May 9, 2022
14. Employer's Motion to Modify Status Hearing Order to Reset Deposition of Lay Witnesses
15. Response to Employer's Motion to Modify Status Hearing Order
16. Notice of Intent to Seek Attorneys' Fees
17. Employee's Motion to Compel Discovery Responses
18. Order Granting Motion to Alter
19. Employee's Motion for Contempt of Court and Penalty Referral, July 1, 2022 (no attachments)
20. Employee's Motion for Continuance
21. Employer's Response to Employee's Motion to Compel Discovery Responses
22. Order Setting Hearing on Motions
23. Dispute Certification Notice, July 11, 2022
24. Employer's Response to Employee's Motion for Continuance
25. Employer's Response to Employee's Motion for Contempt of Court and Penalty Referral
26. Order Resetting Motion Hearing
27. Employer's Supplemental Response to Employee's Motion for Contempt of Court and Penalty Referral (no attachments)
28. Order on Motion for Contempt of Court and/or Penalty Referral
29. Order on Motion to Compel Discovery
30. Employer's Motion for Additional Time
31. Employer's Notice of Payment of Medical Bills (no attachments)
32. Employee's Motion for Contempt of Court and Penalty Referral, September 7, 2022
33. Notice of Compliance (no attachments)
34. Employer's Response to Employee's Second Motion for Contempt of Court and Penalty Referral
35. Order on Compliance

36. Pretrial Order
37. Dispute Certification Notice and Employer's Additions
38. Employer's Pre-Compensation Hearing Statement
39. Notice of Filing Employer's Exhibit List (no attachments)
40. Employee's Pre-Compensation Hearing Statement
41. Order on Post-Trial Submissions
42. Employee's Notice of Filing Past Unpaid Medical Bills
43. Employer's Notice of Filing Unpaid Medical Bills
44. Motion to Resolve Medical Bill Dispute and for Additional Time to Complete Fee Application
45. Employer's Response to Employee's Motion
46. Order Granting Extension
47. Attorney Fee Application
48. Employer's Response to Counsel's Affidavit Requesting Fees
49. Employee's Reply

Exhibits
1. Employee Choice of Physician form
2. Notice of Denial
3. Dr. Hazlewood's deposition transcript and attached exhibits
4. Dr. Joyner's deposition transcript and attached exhibits
5. Dr. Nevels's deposition transcript and attached exhibits
6. Employer's Composite Exhibits
   - Telephone message canceling the functional capacity evaluation
   - Results Physiotherapy discharge summary
   - Dr. Joyner's C-30A Final Medical Report, February 18, 2022
7. Associate First Report of Injury
8. Sedgwick-denial letter
9. Dr. Joyner records, March 9, 2021
10. TOA MRI Patient Questionnaire
11. Ambulatory Surgery Center record

**CERTIFICATE OF SERVICE**

I certify that a copy of this Order was sent as indicated on March 16, 2023.

| Name | Email | Sent to |
|---|---|---|
| J. Allen Brown, employee's attorney | **X** | allen@jallenbrownpllc.com |
| Kristen Stevenson, Adam Brock-Dagnan, employer's attorney | **X** | Kcstevenson@mijs.com<br>Acbrock-dagnan@mijs.com<br>telett@mijs.com |

_____

Penny Shrum
Clerk, Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov



## NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury:** _____

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____     ☐ Motion Order filed on _____

☐ Compensation Order filed on_____     ☐ Other Order filed on_____

issued by Judge _____.

**Statement of the Issues on Appeal**

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____
_____
_____
_____

**Parties**

**Appellant(s)** (Requesting Party): _____ ☐Employer ☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐Employer ☐Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____
*[Signature of appellant or attorney for appellant]*